EDWIN A. LOMBARD, Judge.
liThe Appellant, 1026 Conti Condominiums, LLC, (“Conti”), seeks review of a December 16, 2014 judgment of the district eourt denying it a predial servitude of parking on the property of the Appellee, 1025 Bienville, LLC (“Bienville”). Moreover, in its Answer to. Appeal, Bienville seeks review of the district court’s grant of a predial servitude of access and passage to Conti. Finding that the judgment of the district court is not manifestly erroneous, we affirm. Lastly, the Answer to the Appeal of Bienville is denied.
Facts and Procedural History
The instant appeal involves a dispute between two French Quarter landowners over the existence of a predial servitude of parking. On June 2, 2006, Conti purchased a piece of property in Orleans Parish, located at 1026 Conti Street, from *726 Bruno Properties, LLC (“Bruno Properties”). In the Act of Sale, 1026 Conti Street, referred to as Lot 3, included a building containing seven condominium units. Adjacent to the land, on its wesfe-side, is an alley leading to a land-locked courtyard, that is located directly behind Lot 3 and another adjacent property. The I ^property description in the Act of Sale provides that the right to use, also known as a servitude, over both the alley and the courtyard is included.
Bruno Properties later sold other properties located on the same block on 1026 Conti St., including properties bordering the above-referenced alley and courtyard. Moreover, Bruno Properties sold Lot AA, which encompasses most of the courtyard, to Bienville.[1] The servitude at issue burdens Lot AA.
For three years following the Acts of Sales to Conti and Bienville, respectively, the courtyard was used for parking by both parties. In 2009, however, Bienville striped the courtyard for parking and posted signage, claiming that it had exclusive use of the courtyard and unauthorized vehicles would be towed.
Conti filed suit against Bienville in December 2009, seeking a preliminary injunction and a declaratory judgment confirming its legal, non-exclusive right to use the alley and courtyard that it acquired in the Act of Sale. The district court later granted a preliminary injunction preventing Bienville from interfering with Conti’s right of use of the alleged servitude.
Conti filed a motion for summary judgment “seeking a declaration as to the existence, extent and type” of servitude granted. After a hearing, the district court granted Conti’s motion and stated in its May 13, 2011 judgment that a predial servitude of access, passage and parking existed on Bienville’s property for the benefit of Conti’s property.
| ¡¿Bienville appealed the district court’s judgment, which we reversed in 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC, 11-1065 (La.App. 4 Cir. 2/8/12), 84 So.3d 778, 784, unit denied sub nom. 1026 Conti Condominiums, LLC v. 1025 Bienville, LLC, 12-0801 (La.5/25/12), 90 So.3d 416. We held that a genuine issue of material fact existed as to the scope of the servitude granted to Conti, including whether the right to park was encompassed. Id., 11-1055, p. 12, 84 So.3d at 785. We further held that a genuine issue of material fact existed as to whether the use the parties made of the alley and courtyard, for the three years they shared them, should be considered “typical and therefore determinative of the parties’ intent with regard to the scope of the servitude.” Thus, we reversed the district court’s grant of summary judgment and remanded the matter for trial on the merits. Id.
Following a bench trial for declaratory judgment and for permanent injunction, the district court rendered judgment on October 8, 2014, holding that a predial servitude existed in favor of the dominant estate, Conti’s property, for access and passage only. The district court determined that parking was not permitted with the predial servitude. Thereafter both parties filed motions for new trial. The district court held a hearing on Bienville’s motion for new trial, which -it granted and rendered an Amended Judgment granting the following relief on December 16, 2014:
*727 1. Denying Conti’s demand for a permanent injunction and dissolving the preliminary injunction issued on May 11, 2010;
2. Recognizing and establishing a pred-ial servitude solely for access and passage on Lot AA in favor of Con-ti’s property;
3. Denying parking rights to Conti in connection with the aforementioned servitude; and
[t4. Assessing costs against Conti.
Conti’s motion for new trial was denied. Thereafter, Conti timely filed the instant appeal and raises two assignments of error:
1. The district court erred in holding that Conti’s right to use the courtyard does not include parking, and only allows Conti to pass over a portion of Lot AA in the course of making a turn; and
2. The district court erred in stating in its Reasons for Judgment that Bien-ville may restrict Conti’s use of the courtyard, when the title creating the servitude provides that Conti has a right to use the entire courtyard.
Standard of Review
Judgments regarding servitudes are reviewed under the manifest error standard of review. Allen v. Cotten, 11-1354, p. 3 (La.App. 3 Cir. 5/2/12), 93 So.3d 681, 683 [citations omitted]. An appellate court may not set aside a trial court’s findings of fact unless they are manifestly erroneous or clearly wrong. Id. (eiting Rosell v. ESCO, 549 So.2d 840 (La.1989)). To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court’s finding and that the record shows the finding to be manifestly erroneous. Id. (citing. Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993)).
 Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
| ^However, legal errors, are reviewed under the de novo standard of review. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. P’ship, 01-2812; p. 6 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, 89-90, writ denied, 03-0306 (La.4/4/03), 840 So.2d 1219. “Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.” Id. When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id., 01-2812, p. 6, 839 So.2d at 90 (citing Evans v. Lungrin; 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731; Turner v. Ostrowe, 01-1935 (La.App. 1st Cir.9/27/02), 828 So.2d 1212).
Parking Prohibition
Conti’s first assignment of error is that the district court erred in holding that its right of use excluded parking in the courtyard because:
*728 • the district court ignored the undisputed, ongoing actual use of Lot AA for parking;
• the district court manifestly erred in concluding that Conti’s right of use was intended by Conti or Bruno Properties to include only access and passage, but not parking;
• the district court manifestly erred in admitting Frank Bruno’s testimony under the residual exception to the hearsay rule;
• the district court manifestly erred in concluding that Mr. O’Brien was “uncertain” about Conti’s right to use the courtyard; and
h* the district court erred in construing factual disputes as doubts that must be resolved in Bienville’s favor under La. Civ.Code art. 730.
As we previously held in 1026 Conti, supra, and the district court determined at trial, a servitude was created in Conti’s Act of Sale. Moreover, the district court reasoned that the servitude description contained in the Act of Sale was silent as to its manner of use. We agi'ee. . The property description contained within Con-ti’s Act of Sale states in pertinent part:
That a certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Second District if [sic] the City of New Orleans, State of Louisiana, in Square 97, bounded by Conti, North Rampart, Bienville and Burgundy Street; said lot of ground is designated by the No. 3 ... said lot measures 25 feet, 5 inches, front on Conti Street, by a depth of 119 feet, 4 inches and 4 lines, bounded on the side towards Burgundy - Street by Lot No. 2 and on the other side towards North Rampart Street by an alley 10 feet, 3 inches, 4 lines in width, with the right to use said alley as well as of a “court” figured on said plan and common to Lots 1, 2, and 3 and other property ... [Emphasis added].
Ultimately, however, the district court explained that “[n]o evidence was presented that conclusively established that the servitude includes parking rights.” In reaching this conclusion, the district court principally examined the possible purposes of the servitude pursuant to La. Civ.Code art. 749 and the intent of the parties leading up to the Act of Sale.
A predial servitude is a charge on a servient estate for the benefit of a dominant estate.[2] La. Civ.Code art. 646. “Predial servitudes may be established by an owner on his estate or acquired for its benefit. The use and extent of such |7servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules.” La. Civ.Code art. 697. “If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in the light of its purpose.” La. Civ.Code art. 749. Ambiguities in the titles may be resolved by suppletive provisions of the Civil Code, the situation of the estates, and past acts of use and possession. A.N. Yiannopoulos, 4 La. Civ. L. Treatise, Pi'edial Servitudes § 7:2 (4th Ed.).
The Second Circuit in St. Andrews Place, Inc. v. City of Shreveport, 40,260, pp. 10-11 (La.App. 2 Cir. 11/4/05), 914 So.2d 1203, 1210, explained that predial servitudes are disfavored under Louisiana *729 law and that doubt as to the extent or manner of exercise of a servitude is to be resolved in favor of the servient estate:
Predial servitudes are in derogation of public policy because they form restraints on the free disposal and use of property. Therefore, servitudes are not entitled to be viewed with favor by the law and can never be sustained by implication. See Palomeque v. Prudhomme, 95-0725 (La.11/27/95), 664 So.2d 88.
When these elements are unclear or doubtful on the face of the title,, a court may not supply them by implication or reform the language used in the title to broaden or restrict the terms of the original agreement. Doubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude.
The district court considered three possible types of use for the servitude at issue: access, passage and parking. A servitude of passage is defined in La. Civ. Code art. 705 as follows:
The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be ^suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate.
By comparison, however, a servitude for parking has been determined to be a greater infringement on the servient estate. See Garner v. Holley, 42,477, pp. 7-8 (La.App.2d Cir.10/3/07), 968 So.2d 234, 239; Irland v. Barron, 230 So.2d 880 (La.App. 2d Cir.1970).
In the instant matter, the district court, after hearing conflicting testimony from witnesses, concluded that it was unclear that parking was a contemplated use by the parties. The district court considered the testimony of Robert O’Brien, who is Conti’s managing member, and two witnesses for Bienville, Frank Bruno[3] and Vincent Marcello. Messrs. Bruno and O’Brien were parties to the Conti’s Act of Sale. Mr. Marcello is a managing member of Bienville.
Mr. O’Brien testified at trial that he would not have purchased the Conti property from Bruno Properties if the right to park was not included. He further stated that at the closing, he and Mr. Bruno argued over whether the servitude would include the right to park, but Mr. Bruno urged that the disagreement could be resolved.
Mr. Bruno testified that Bruno Properties never intended to convey parking rights in Conti’s Act of Sale. Mr. Bruno further stated that it was not the intention of Bruno Properties to convey a servitude at all, Bienville also relies upon Mr. | gMarcello’s testimony that Mr. O’Brien asked him for permission to park in Lot AA temporarily while Conti was doing construction and renovation work on its prop *730 erty; this claim is disputed by Mr. O’Brien.
The district court credited the testimony of Bienville’s witnesses over Conti’s in determining that parking was not a contemplated use of Lot AA by the parties at the Act of Sale. Even if we were to reach a differing conclusion, based upon the record, we cannot say that the district court’s determination was manifestly erroneous. The testimony of the witnesses reveals that leading up to the Act of Sale there was no meeting of the minds between the representatives of Bruno Properties and Conti that parking was to be an included use of the servitude.
Moreover, the district court determined that if Conti did have parking rights on Lot AA it would present an unnecessary impediment to Bienville as parking is neither needed nor essential to Conti’s use of its condominium development under the facts of this case. See Robert Inv. Co. v. Eastbank Inc., 496 So.2d 465, 470 (La.App. 1 Cir.1986). We cannot say that this finding .was manifestly erroneous based on the record. Conti’s use of Lot AA for parking may be “desirable and advantageous” for its condominium development; however, it is not essential to its utilization of Lot AA. Id.
To read into a vaguely-worded servitude from Conti’s Act of Sale the onerous right of parking would contradict Louisiana jurisprudence that “doubt as to the existence, extent or manner of exercise of a servitude must be resolved in favor of the estate claimed to be burdened by the servitude.” St. Andrews Place, Inc., 40,260, pp. 10-11, 914 So.2d at 1210. “The Supreme Court has consistently required that the creation of a servitude be free from doubt.” Robert Inv. Co., 496 So.2d at 469. In light of the record and the above-referenced jurisprudence, we do 11flnot find that the district court erred in denying Conti a servitude of parking on Bienville’s property. This assignment of error is without merit.
Restricted Use of the Courtyard or Servitude
In its second assignment of error, Conti argues that the district court erred in holding that Bienville could designate the location of the servitude, thereby restricting its extent and size under La. Civ. Code art. 750. Conti admits that this language is not included in the Judgment; therefore, it argues, this language is not controlling.
As Conti admits, the Reasons for Judgment of the district court are distinct from the judgment itself. It is well-established that “Reasons for Judgment” are not controlling and do not constitute the “Judgment” of the court. Kaufman v. Adrian’s Tree Service, Inc., 00-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104. See also Theresa Seafood, Inc. v. Berthelot, 09-0814, p. 7 (La.App. 4 Cir. 3/10/10), 40 So.3d 132, 137, amended on reh’g (May 12, 2010) [wherein we held that suggestions made by the trial court in its reasons for judgment are not controlling.]. Moreover, “[ajppeals are taken from the judgment, not the written reasons for judgment.” Greater New Orleans Expressway Com’n v. Olivier, 02-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24.
Considering that the Judgment is silent as to Bienville’s right to designate the location, or otherwise restrict the servitude, we. decline to address this issue on. appeal as it goes beyond the scope of the Judgment.
Answer to the Appéal of Bienville
Bienville argues that it is aggrieved by the district court’s December 18, 2014 judgment and requests that the judgment be modified to clarify that Conti did not acquire a predial servitude of access and *731 passage over the Lot AA. It further . ^requests that Conti pay the costs of the appeal. Bienville ■ asserts that a predial servitude of access and passage was not created by the ambiguous terms of. the June 6, 2006 Act of Cash Sale and that the district court incorrectly held on remand, following dicta from the opinion' of this court, that it was bound by this' Court’s determination that a servitude was granted to Conti.
Having determined that a predial servitude does exist and affirming the judgment of the district court,' we deny Bienville’s answer to the appeal.
DECREE
For the foregoing reasons, the December 16, 2014 judgment of the district court is affirmed. The Answer to Appeal of 1025 Bienville, LLC, is denied.
AFFIRMED; ANSWER TO APPEAL DENIED

. Bienville had record notice of Conti's servitude over the alley and courtyard, including Lot AA, because Conti’s Act of Sale was recorded by the time that Bruno Properties sold Bienville its properties. No representative of Bruno Properties, however, informed Bien-ville of the servitude.

. In the matter sub judice, Conti’s property is the dominant estate and Bienville’s Lot AA is the servient estate,

. Mr. Bruno was a manager of Bruno Properties. At trial, the district court considered an affidavit he had previously executed as well as his testimony from a preliminary injunction hearing. Prior to trial, Bienville filed a "Motion in Limine for Introduction of Preliminary Injunction Testimony and Affidavit of Frank Bruno” wherein it explained that Mr. Bruno was suffering from dementia and, therefore, was unable to testify at trial. Though Conti argues that the admission of Mr. Bruno’s testimony was nothing more than inadmissible hearsay, Mr. Bruno was an “unavailable witness” due to his mental illness or infirmity, pursuant to La, Code of Evid. art. 804(A)(4). Thus, his former testimony was admissible under the hearsay exceptions of La.Code of Evid art. 804(B)(1) and/or (6).